UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANGELA ROCHELLE FARMER,<br><br>        Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br><br>Acting Commissioner of Social Security,<br><br>        Defendant. | No.  2:15-CV-0073-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 14, 24 |

BEFORE THE COURT are the parties' cross-motions for summary judgment.  ECF Nos. 14, 24.  The parties consented to proceed before a magistrate judge.  ECF No. 7.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No. 24).

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g)

Page 1

is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  *Id*. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  *Id*. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  *Id*. § 416.920(a)(4)(ii).  If the claimant suffers from "any

Page 3

impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. *Id*. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. *Id*. § 416.920(a)(4)(iii). If the impairment is as severe, or more severe, than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. *Id*. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, *id*. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). *Id*. § 416.920(a)(4)(iv). If the claimant is capable

Page 4

of performing past relevant work, the Commissioner must find that the claimant is not disabled.  *Id*. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. *Id*. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id*.  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  *Id*. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id*.

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r, of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff protectively applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on July 25, 2011, alleging amended onset

beginning July 1, 2011.  Tr. 79.  The applications were denied initially, Tr. 77-100, and upon reconsideration, Tr. 101-130.  Plaintiff appeared for a hearing before an administrative law judge (ALJ) on April 30, 2013.  Tr. 39-76.  The ALJ denied Plaintiff's claim for SSI and DIB on June 26, 2013.  Tr. 18-38.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (as amended) of July 1, 2011.  Tr. 23. At step two, the ALJ found Plaintiff suffers from the following severe impairments: status post-right radial head fracture; mild lumbosacral degenerative changes; obesity; left-wrist tenosynovitis status post-surgical release; mood disorder; post-traumatic stress disorder; personality disorder with anti-social features; and substance-dependence disorder.  Tr. 23.  At step three, the ALJ found her impairments did not meet or equal the requirements of a listed impairment.  Tr. 25.  The ALJ then concluded that Plaintiff was able to perform light work with some restrictions.  Tr. 25-30.  At step four, the ALJ found Plaintiff could not perform her past relevant work.  Tr. 30.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as assembly production worker, production inspector, and hand packager.  Tr. 31.

Plaintiff appealed the ALJ's decision on July 15, 2013.  Tr. 15.  Three months later, Plaintiff submitted new evidence, which consisted of psychological

evaluations from Dennis R. Pollack, Ph.D., conducted on August 8 and September 9, 2013.  ECF No. 14-1.  The Appeals Council denied her request for review on January 28, 2015, Tr. 1-5, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II and Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly discredited Plaintiff's symptom claim;

2.  Whether the ALJ properly weighed the medical opinion evidence; and

3.  Whether this Court should consider new evidence submitted to the Appeals Council.

## DISCUSSION

Plaintiff contends the ALJ improperly discredited (1) her complaints about the severity of her functional limitations; and (2) the medical opinions of her treating and examining doctors.  She maintains that these errors led the ALJ to include only some of her limitations in her RFC assessment.  In determining whether the ALJ erred, Plaintiff also asks this Court to consider evidence she submitted for the first time to the Appeals Council.

Page 7

**A. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 14 at 13-17.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

Page 8

must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r, of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).[1]

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

---

[1] Defendant argues that this court should apply a more deferential "substantial evidence" standard of review to the ALJ's credibility findings. ECF No. 24 at 2-3 n.1. The Court declines to apply this lesser standard. The Ninth Circuit recently reaffirmed in *Garrison*, that "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so;" and further noted that "[t]he government's suggestion that we should apply a lesser standard than 'clear and convincing' lacks any support in precedent and must be rejected." 759 F.3d at 1015 n.18; *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

Page 9

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ discounted Plaintiff's statements about the intensity,

persistence, and limiting effects of her symptoms, concluding that Plaintiff's

physical and mental limitations were not as debilitating as she claimed.

Specifically, the ALJ found Plaintiff lacked credibility because: (1) medical

evidence did not support the severity of her alleged functional limitations; (2) her

symptoms were well-controlled; (3) medical opinion evidence suggested she could

work; and (4) she exhibited drug-seeking behavior. This Court finds the ALJ

provided several specific, clear, and convincing reasons for finding that some of

Plaintiff's "symptom allegations are not credible." Tr. 28.

*1. Objective Medical Evidence*

First, the ALJ found that the objective medical evidence did not support the

degree of mental and physical limitations alleged by Plaintiff. Tr. 28-29. The ALJ

set out, in detail, the medical evidence regarding Plaintiff's impairments, and

ultimately concluded that her allegations were inconsistent with the medical

evidence. Tr. 28-29. The ALJ specifically discussed medical evidence

contradicting Plaintiff's claims of severe mental health issues. For example, the

ALJ concluded that the medical findings were "unimpressive." Tr. 28. In March

2011, an examination by William Greene, Ph.D., showed that Plaintiff was

Page 10

1  cooperative, and polite, though immature; her speech was understandable and

2  clear; her eye contact was good; she could initiate and hold a conversation; her

3  through processes were organized.  Tr. 424-25.  Dr. Greene concluded she was

4  capable of working.  Tr. 423.

5      With respect to her physical limitations, in June 2012, Plaintiff admitted that

6  she had full range of motion without difficulty.  Tr. 942.  These findings occurred

7  at a time when Plaintiff had fallen down stairs, which resulted in a report of

8  considerable pain.  Tr. 942.  Although she had abrasions on her upper and lower

9  extremities, she was able to move all extremities without any signs of "discomfort,

10  disability, rigidity, or tremor."  Tr. 942.  Only slight tissue swelling existed and

11  she was fully ambulatory.  Tr. 942.

12      As to her complaints about wrist pain, by October 2012, after wrist surgery,

13  medical sources declared that she was well-healed with no restrictions in her

14  activities.  Tr. 28, 1020.  In a follow up visit, the treating physician found that "her

15  subjective pain complaints significantly outweigh her physical exam."  Tr. at

16  1020.

17      Such inconsistencies between Plaintiff's alleged limitations and medical

18  evidence provided a permissible reason for discounting Plaintiff's credibility.  *See*

19  *Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to

20  the severity of her pain and impairments is unreliable, the ALJ must make a

1  credibility determination . . . [t]he ALJ may consider testimony from physicians

2  and third parties concerning the nature, severity and effect of the symptoms of

3  which the claimant complains."); *see also Rollins v. Massanari*, 261 F.3d 853, 857

4  (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole

5  ground that it is not fully corroborated by objective medical evidence, the medical

6  evidence is still a relevant factor in determining the severity of the claimant's pain

7  and its disability effects.").

8      Plaintiff contends that the ALJ "cherry-picked" this evidence to

9  mischaracterize the record.  She contends the overall record demonstrates her

10  long-term disability.  As evidence, Plaintiff takes issue with the ALJ's failure to

11  recognize that Dr. Greene also found her depressed with a subdued expression on

12  the same day he concluded she was capable of holding a job.  ECF. No. 14 at 15.

13  But the ALJ did not find that she was not suffering from depression; instead, the

14  ALJ found it was "well-controlled."  Regardless, substantial evidence supports the

15  ALJ's finding.  Other doctors concurred with Dr. Greene's opinion.  Matthew

16  Comrie, Psy.D. and Eugene Kester, M.D. also reviewed Plaintiff's records.  Tr.

17  79-89, 103-116.  Both concurred that Plaintiff was capable of the mental demands

18  of work.  Tr. 86, 112.

19

20

Page 12

### 2. Well-Controlled Symptoms

Second, the ALJ discounted Plaintiff's testimony about the limitations she suffers because, the ALJ found, Plaintiff's mental health symptoms were well-controlled.  Tr. 28.  An impairment that can be controlled effectively is not disabling for social security purposes.  *Warre v. Comm'r, of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  As evidence to support her finding, the ALJ referred to the notes of treatment providers.  Tr. 28.  Plaintiff told Michael Tippets, M.D., that her depression was "well controlled" with medications.  Tr. 915.  Dr. Tippets described Plaintiff as "doing well" with "no acute issues."  *Id.*  One month later, Dr. Tippets found Plaintiff was "alert and cooperative" with "normal mood and affect; normal attention span and orientation; [and] memory intact."  Tr. at 922.

Plaintiff contends her symptoms are not well-controlled and, as a result, substantial evidence does not support the ALJ's finding.  Whether symptoms are well controlled is factual determination.  *See*, *e.g.*, *Tagger v. Astrue*, 536 F. Supp. 2d 1170, 1180 (C.D. Cal. 2008) (reviewing the record to determine whether claimant's disabilities were under control).  In support of her argument, Plaintiff contends the ALJ "cherry-picked" the evidence which supported the ALJ's conclusion and that the record as a whole establishes her symptoms were not well-

Page 13

1   controlled.  ECF No. 14 at 15.  In particular, Plaintiff directs the Court's attention

2   to the notes of Drs. William Greene, Michael Tippets, and Brad Wynn.

3        Plaintiff cites to Dr. Greene's notes, which described Plaintiff as depressed

4   with flat and somewhat subdued expression.  Tr. 427.  However, he also noted that

5   he could not "differentiate between mental health symptoms and symptoms of

6   drug and alcohol abuse."  Tr. at 422.  Even if he could, the examination would not

7   reliably reflect Plaintiff's limitations.  Leslie Morey, Ph.D., reviewed Plaintiff's

8   personality assessment inventory from that day and concluded that it was likely

9   that Plaintiff was confused or careless in responding.  Tr. 437.  Alternatively, Dr.

10   Morey opined that the test results reflected a "cry for help" or some deliberate

11   distortion (*i.e.*, possible malingering), and concluded that examination is unlikely

12   to accurately reflect Plaintiff's objective clinical status.  Tr. 437.

13        Even if the examination accurately reflected Plaintiff's mental health, Dr.

14   Greene's notes confirm the ALJ's assessment.  While Plaintiff told Dr. Greene her

15   medication did not control her symptoms, she did remarkably well in the mental

16   status exam.  In that exam, Dr. Greene found Plaintiff cooperative and polite,

17   though immature; he could understand her clearly; she communicated coherently

18   with conversation that was on-topic, relevant, and appropriate.  Tr. 426.  Plaintiff

19   held good eye contact; could initiate and hold conversation; and was alert and

20   oriented.  Tr. 425-26.  Plaintiff followed three commands without difficulty; her

Page 14

thought processes were organized; she exhibited no obsessive thoughts, difficulty explaining her thoughts or finding words; and there was no indication of a formal thought disorder.  Tr. 426.  Dr. Greene found her intellectual ability to be roughly average and her ability to abstract adequate.  Tr. 427.  She recalled her personal history with no difficulty; recalled the recent past in adequate detail; and could recall three words without difficulty.  Tr. 426-27.  She remembered Dr. Greene's name; denied any memory problems; was able to spell "world" forwards and backwards; and completed her serial 7s from 100.  Tr. 426-27.  Plaintiff seemed depressed, but displayed no inappropriate affect.  Tr. 427.  Significantly, Dr. Greene concluded Plaintiff is "capable of holding a job."  Tr. 423.  Accordingly, Dr. Greene's notes do not undermine, and in fact, support the ALJ's finding that Plaintiff's symptoms were well-controlled.

Plaintiff also directs the Court's attention to Dr. Tippets' report, who noted Plaintiff complained of agoraphobia and that her depression affected her appetite.  Tr. 915.  But Plaintiff also told Dr. Tippets that "overall she has a balanced diet when sh[e] has the money."  Tr. at 915.  "Overall," Dr. Tippets concluded, Plaintiff "is doing well.  She has no acute issues at this time that are not controlled with her current regimen."  Tr. at 915.  Again, the Court finds that Dr. Tippets notes do not undermine, and in fact, support the ALJ's findings regarding Plaintiff's mental health symptoms.

Page 15

1    A month later, Plaintiff told Brad Wynn, D.O, she felt depressed.  Tr. 926.

2    Dr. Wynn noted that Plaintiff started crying when he entered the room and that she

3    "endorsed depressive symptoms."  Tr. at 926.  To help her get through this tough

4    time, she requested "something stronger like hydros," which Dr. Wynn declined to

5    prescribe.  Tr. 924-926.  The Court finds that these notes do not undermine the

6    ALJ's finding.  Particularly given Plaintiff's history of drug-seeking behavior,

7    discussed below, these notes do not undermine the ALJ's conclusion that

8    Plaintiff's mental health symptoms were well-controlled.  Even if Dr. Wynn's

9    notes were susceptible to more than one rational interpretation, the Court must

10   uphold the ALJ's findings when they are supported by inferences reasonably

11   drawn from the record.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

12   2008).

13       The ALJ is charged with determining credibility and resolving ambiguities

14   in the record.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492, (9th Cir. 2015).  Where

15   evidence exists to support more than one rational interpretation, the Court must

16   defer to the decision of the ALJ.  *Drouin v. Sullivan*, 966 F.3d 1255, 1258 (9th

17   Cir. 1992).

18       *3.  Medical Opinions Regarding Ability to Work*

19       Third, the ALJ found Plaintiff's symptom complaints not credible because

20   the "medical opinions support the conclusion that the [plaintiff] is able to work."

Page 16

Tr. at 29.  An ALJ may rely on a physician's medical opinion finding that Plaintiff can work in assessing credibility.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that medical reports concluding that Plaintiff can work supported ALJ's adverse credibility finding).  In March 2011, Dr. Greene examined Plaintiff, noted that she works at Labor Ready one day a week, and concluded that she "is capable of holding a job."  Tr. 422-423.  The ALJ's reliance on Dr. Green's conclusion was appropriate in assessing Plaintiff's credibility.

### 4.  *Drug-Seeking Behavior*

Fourth, the ALJ discredited Plaintiff's testimony regarding her symptoms because she exhibited drug-seeking behavior.  Tr. 29.  Drug-seeking behavior can constitute a clear and convincing reason to discount a claimant's credibility.  *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) (holding that evidence of drug-seeking behavior undermines a claimant's credibility); *Gray v. Comm'r, of Soc. Sec.*, 365 Fed. App'x. 60, 63 (9th Cir. 2010) (evidence of drug-seeking behavior is a valid reason for finding a claimant not credible); *Lewis v. Astrue*, 238 Fed. App'x. 300, 302 (9th Cir. 2007) (inconsistency with the medical evidence and drug-seeking behavior sufficient to discount credibility); *Morton v. Astrue*, 232 Fed. App'x. 718, 719 (9th Cir. 2007) (drug-seeking behavior is a valid reason for questioning a claimant's credibility).

Page 17

1    Here, the ALJ relied on the notes of an emergency room physician who

2  described Plaintiff as at risk for drug-seeking behavior.  Tr. 29, 903.  Specifically,

3  Dr. Eckenrod refrained from prescribing any narcotics to Plaintiff as she had been

4  seen in emergency rooms on multiple occasions for her pain complaints, which

5  resulted in her being given small doses of narcotics.  Tr. 903.  Dr. Eckenrod,

6  relying on records related to her prior emergency room visits, believed this

7  conduct showed she was at risk for drug seeking behavior.  Tr. 29, 903.

8    Plaintiff argues that the opinion of a one-time treating source does not

9  constitute substantial evidence.  Contrary to her assertion, a treating physician's

10 opinion, when not contradicted, constitutes substantial evidence.  *See*, *e.g., Han v.*

11 *Bowen*, 671 F. Supp. 702, 705 (D. Or. 1987) (affirming ALJ's decision because

12 examining doctor's uncontradicted opinion constituted substantial evidence).

13 When a treating physician's medical opinion is well supported and not

14 inconsistent with the record, the opinion is entitled to controlling weight.  *See*

15 *Edlund*, 253 F.3d at 1157 (9th Cir. 2001).  Here, Dr. Eckenrod's opinion is

16 uncontradicted and well supported in the record.

17

18

19

20

The record is replete with evidence indicative of Plaintiff's drug-seeking behavior.[2]  To begin, she has been diagnosed as opioid, methamphetamine, and cannabis dependent, and in March 2011, she reported her last heroin use was in January 2011.  Tr. 419-21.  In the 53 months of medical records Plaintiff submitted, she visited a medical provider at least 120 times.  Tr. 304-1009.  She sought and received a narcotic in 54 of those visits.  Tr. 342, 345, 347-48, 351-52, 354-56, 358, 360, 364, 368, 370, 372, 374, 376-77, 379, 381-83, 385, 543, 570,

---

[2] Plaintiff urges this Court to ignore the remainder of the record because the ALJ did not explicitly reference the dozens of visits in which Plaintiff explicitly sought a narcotic.  As Plaintiff correctly notes, this Court "may not affirm an ALJ on a ground upon which he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  But there is a difference between "supplying a post-hoc rationalization for the ALJ's decision," and reviewing the record for "additional support for the Commissioner's and ALJ's position."  *Warre*, 439 F.3d at 1006 n.3.  The latter is not just permissible, but mandatory.  *Id.*; *Orn*, 495 F.3d at 630 (A reviewing "court must consider the entire record as a whole.").  Moreover, here, the ALJ relied on Dr. Eckenrod's notes, which reflected that Dr. Eckenrod relied on medical records documenting Plaintiff's dozens of emergency room visits seeking narcotics.  Tr. 903.

Page 19

575, 578, 580, 590, 597, 599, 601-02, 604, 773-74, 779, 806, 808, 810, 812, 823, 830, 909, 912, 946-48, 953, 956, 958, 966, 981, 992, 969, 971, 1009, 1011, 1022.

There are numerous instances where Plaintiff visited a medical provider or an emergency room, complaining of pain and seeking narcotics, for which the treatment provider could not substantiate the cause of the pain or made minimal findings regarding the cause of the pain. *See, e.g*., Tr. 375-76, 406 (Dec. 2008 emergency room visit due to a fall claiming injuries to her right foot, ankle, left hip, received Lortab); Tr. 371-72, 398-99 (Mar. 2009 emergency room visit due to a fall claiming injuries to her leg, received Lortab); Tr. 363-364 (Aug. 2009 emergency room visit, seeking a refill of pain medications, which were refused by ER doctor); Tr. 601, 616-617, 359-360 (Feb. 2010 emergency room visit, seeking pain medication for right arm, received Lortab); Tr. 358, 396 (March 2010 emergency room visit for left foot injury, received Tramadol); Tr. 353-354 (June 2010 emergency room visit seeking refill of pain medication for back pain, received narcotic pain meds); Tr. 598-99, 870-871 (Aug. 2010 emergency room visit for back pain, received Lortab); Tr. 792-93 (Aug. 2010 visit to treating physician where physician refused to prescribe Plaintiff the requested opioids, noted she missed an appointment with a drug dependency counselor, and suggested a non-narcotic regimen); Tr. 583 (Jan. 2011 emergency room visit for injury to back while carrying box; physician refused to prescribe Plaintiff the

opioids she requested because Plaintiff is "us[ing] the Emergency Departments around town for pain management issues."); Tr. 579 (March 2011 emergency room visit, complaining of abdomen pain, received limited Vicodin and Ultram).

Moreover, similar to Dr. Eckenrod, there are numerous instances where Plaintiff sought pain medication and providers refused to prescribe it because of her prior behavior. *See, e.g.*, Tr. 363-364 (Aug. 2009 emergency room visit to refill pain medications, which the doctor refused); Tr. 793 (Aug. 2010 doctor visit where doctor expressed disappointment that Plaintiff missed appointment with a drug dependency counselor and suggested a non-narcotic to treat her pain); Tr. 583 (Jan. 2011 emergency room visit complaining of back pain, doctor refused to prescribe narcotics, noting Plaintiff "uses the Emergency Department around town for pain management issues," had "nearly 20 visits in 2010 for mostly pain issues," and had four ER visits in the past 17 days); Tr. 813-14 (Sept. 2011 visit for medication refill; physician refused Plaintiff's request for Tramadol because of lack of abnormalities in examination to justify pain complaints); Tr. 931 (June 2012 visit for chronic back pain, treating physician prescribed physical therapy and refused to prescribe opioids); Tr. 590-91, 795 (on same day that treating physician refused to prescribe narcotics, Plaintiff went to emergency room and sought narcotics for abdominal pain and migraine, received Ultram). On approximately 20 other occasions, providers also declined to prescribe opioids

Page 21

despite Plaintiff's requests.  Tr. 364, 337-38, 341, 584, 781, 784, 793-94, 814, 902-03, 926, 930, 932, 942, 995, 973, 998, 1003, 1006, 1020.

Matthew Comrie, Psy.D., and Eugene Kester, M.D., summarized Plaintiff's behavior as follows: Plaintiff "is scamming the system to get narcotic pain meds. She is a drug abuser and is simply trying to support a habit.  Constant ER visits with minimal findings and pain meds prescribed up to twice a week."  Tr. at 82, 109.  Given this record, the ALJ's reliance of Plaintiff's drug-seeking behavior was a specific, clear, and convincing reason to discredit her testimony.

**B. Medical Opinion Evidence**

Next, Plaintiff faults the ALJ for discounting the opinions of her treating physician, Gregory Charboneau, Ed.D., BCN, BCB, and certified physician's assistant, Rogelio Cantu.  ECF No. 14 at 17-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. at 1202. "In addition, the regulations give more

Page 22

weight to opinions that are explained than to those that are not, and to the opinions

of specialists concerning matters relating to their specialty over that of

nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ

may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r, of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-

31).

Physician assistants are "other sources," whose opinions must be

considered. 20 C.F.R. §§ 404.151, 416.913. The ALJ is required to identify

germane reasons to reject the opinion of "other sources." *Molina*, 674 F.3d at

1108.

Contrary to Plaintiff's contention, the ALJ properly rejected the opinions of

Dr. Charboneau. Because his opinion was contradicted, the ALJ was required to

Page 23

identify specific and legitimate reasons for rejecting it.  *See Lester*, 81 F.3d at 830-31.  The ALJ did not error in rejecting physician's assistant Mr. Cantu's opinion because the ALJ cited germane reasons for discrediting it.  *See Molina*, 674 F.3d at 1108.

### 1.  Dr. Gregory Charboneau

Plaintiff contends that the ALJ did not provide specific and legitimate reasons for discounting Dr. Charboneau's opinion that Plaintiff would have "marked difficulty in concentration."  ECF No. 14 at 17-18.

First, the ALJ rejected the opinion because it was not "supported by medical findings . . . in Dr. Charboneau's form."  Tr. at 29.  A record inconsistent with a medical provider's opinion constitutes a specific and legitimate reason for which an ALJ may reject a provider's opinion.  *See, e.g.*, *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (affirming ALJ when presented with inconsistent medical record); *Morgan v. Comm'r, of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) ("[I]nternal inconsistencies within Dr. Reaves's and Dr. Grosscup's reports, and the inconsistencies between their reports, also constitute relevant evidence.").  Here, the ALJ found the medical record inconsistent with Dr. Charboneau's opinion.  Tr. 29.  Dr. Charboneau opined that Plaintiff's anxiety would "markedly" impair her ability to concentrate at work.  Tr. 561.  In describing how her impairment would limit her ability to function at work, Dr.

Charboneau indicated her memory and concentration problems would "moderately impact" her ability to learn new things.  Tr. at 562.  Dr. Charboneau cites Plaintiff's "responses to questions on the mental status exam" as the basis for his assessment.  Tr. at 563.  But the marks Dr. Charboneau made on the mental status exam indicate Plaintiff's attention and concentration were only "mildly impaired." Tr. at 568.  Moreover, Dr. Charboneau appears to rely on Plaintiff's ability to recall five digits forward and four digits backward, for his assessment of marked limitation.  In fact, Plaintiff performed well on nearly every other portion of the mental status examination (MSE), including those that require concentration.  *See* Tr. 565.  Thus, Dr. Charboneau's notes do not support the extreme limitations he diagnosed.

Second, the ALJ discounted the opinion because it was "not supported by medical findings . . . in the other medical records that give a longitudinal view of the claimant's mental impairments and their effect."  Tr. at 29.  An ALJ need not accept the opinions of a physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.  *Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *see also Morgan*, 169 F.3d at 603 (internal consistencies in reports and between reports constitute relevant evidence).  Dr. Charboneau's assessment of marked cognitive limitation directly contradicted other medical records, such as the MSE administered by Dr. Greene

Page 25

(Tr. 426) and his assessment, the opinion of Dr. Cromrie and Dr. Kester, the state agency consultative psychologists, both of whom reviewed the medical record.

Plaintiff's medical records do not substantiate Dr. Charboneau's opinion. An ALJ may reject a psychologist's opinion if the psychologist did not review a claimant's medical records, but instead relied on claimant's reports. *See Bayliss*, 427 F.3d at 1217. Here, Dr. Charboneau did not review any medical records, but relied exclusively on Plaintiff's self-reports, Tr. 560 (summary of records reviewed-"None"). In contrast, Dr. Greene reviewed Plaintiff's medical records and refused to assess any limitations Plaintiff may have because he could not distinguish between her mental health symptoms and symptoms of drug and alcohol abuse. Tr. 422. Drs. Comrie and Kester reviewed the entire record, including Dr. Charboneau's opinion, and reached the same conclusion regarding Plaintiff's mental health limitations. Tr. 85-87, 96-98, 112-113, 126-127. Both concluded that drugs will occasionally interfere with Plaintiff's concentration and contact with others; however, Plaintiff is mentally capable of the demands of work. Tr. 86, 97, 112, 126. "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan*

*v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Here, Drs. Comrie and Kester's

assessment is consistent with Dr. Greene's and Dr. Charboneau's own MSE.

Third, the ALJ discounted the opinion because Dr. Charboneau was not

aware of Plaintiff's history of drug and alcohol abuse.  Tr. 29.  This was a proper

basis to reject Dr. Charboneau's opinion.  *See Coffman v. Astrue*, 469 Fed. App'x

609, 611 (9th Cir. 2012) (affirming ALJ's rejection of examining psychologist's

opinion, in part, due to the fact that plaintiff "periodically concealed" his

substance abuse from treatment providers); *Serpa v. Colvin*, 2013 WL 4480016,

*8 (E.D. Wa., Aug. 19, 2013) (affirming ALJ's rejection of a physician's opinion

because it was made without knowledge of the claimant's substance abuse and

narcotic-seeking behavior).  Here, Dr. Charboneau noted that there was no recent

history of alcohol or substance abuse, no diagnosis of substance abuse or

dependence, and no mental health symptoms affected by substance abuse or

dependence.  Tr. 562.  In fact, Plaintiff had been diagnosed as opioid,

methamphetamine, and cannabis dependent.  Tr. 419-21; *see also* Tr. 23 (ALJ

found Plaintiff had severe impairment of substance abuse dependence).  Moreover,

Dr. Charboneau did not appear to be aware of the drug-seeking behavior discussed

above.  Tr. 562.  This was a specific and legitimate reason to reject Dr.

Charboneau's opinion regarding the cognitive limitation.

Plaintiff contends the ALJ also failed to address "other marked limitations" Dr. Gregory Charboneau noted.  ECF No. 14 at 18.  Plaintiff, however, does not identify these other limitations.  This Court reviews "only issues which are argued specifically and distinctly in a party's opening brief."  *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994).

Plaintiff's only specific contention is that the ALJ should have incorporated into the RFC her inability to maintain appropriate behavior in a work setting. (ECF No. 14 at 18).  The ALJ accepted Dr. Charboneau's opinion regarding Plaintiff's difficulties with social interactions.  Tr. 29.  The ALJ incorporated those limitations on social interactions into Plaintiff's RFC.  Tr. 27.  The ALJ limited Plaintiff to "superficial contact of a brief nature with other people."  Tr. at 27.  When an ALJ accommodates a medical source's assessed limitations into a claimant's RFC, there is no conflict to resolve.   *See*, *e.g.*, *Turner v. Comm'r, of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (holding that the claimant's limitation to "little interpersonal interaction" sufficiently accommodated his doctor's opinion on his mental limitations).

The ALJ provided specific and legitimate reasons for rejecting Dr. Charboneau's opinion regarding limitations on Plaintiff's ability to concentrate.

### 2. *Physician Assistant Rogelio Cantu*

Plaintiff contends the ALJ failed to consider Rogelio Cantu's, PA-C, assessment of her in July 2010 and erred in evaluating the September 2011 assessment. ECF No. 14 at 18-19.

In July 2010, Mr. Cantu completed a DSHS physical evaluation form, Tr. 788-791, which is nearly one year before Plaintiff's amended onset date of July 1, 2011. Tr. 21, 51. Moreover, it indicated that Mr. Cantu expected the sedentary limitations to persist only for the three months following his assessment. Tr. 791. Thus, the assessment expired nine months prior to the alleged disability onset date. Tr. 21, 49, 91. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Moreover, to be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry*, 688 F.3d at 672. Accordingly, Mr. Cantu's 2010 assessment is not probative of Plaintiff's limitations as of the onset date of July 1, 2011, and the ALJ was not required to consider it.

The ALJ discounted Rogelio Cantu's September 2011 assessment because it was presented in a check-box form, which did not contain any objective medical

findings to corroborate Mr. Cantu's assessment.  Tr. 29-30.  In October 2011, Mr. Cantu utilized a check-box form and marked that Plaintiff was only able to lift a maximum of 10 pounds and frequently lifting/carrying of 2 pounds.  Tr. 818.  Opinions on a check-box form or report which do not contain significant explanation of the basis for the conclusions may be accorded little or no weight.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  Moreover, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(3) (an ALJ may afford less weight to an opinion that is unsupported by clinical findings).  Here, the Mr. Cantu relied on a check-box form and provided no objective clinical findings to support the opinion.  This is a germane reason to discount the opinion.

Plaintiff disagrees, contending Mr. Cantu's role as her medical provider ought to constitute sufficient evidence to support his assessment.  In support of this proposition, Plaintiff cites *Lester*, 81 F.3d 821.  In *Lester*, the Court explained that, as "a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  81 F.3d at 830 (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  *Winans* helps clarify "physicians" qualify as "treating sources."  853 F.2d 643.  Mr. Cantu is a

1  physician assistant.  An ALJ may reject the opinion of a physician assistant for any

2  germane reason.  *Molina*, 674 F.3d at 1108.  Here, the ALJ properly rejected Mr.

3  Cantu's assessment because he failed to provide reasons or clinical findings to

4  support his conclusions.

5  **C. New Evidence**

6  Plaintiff asks this court to consider Dennis Pollack's psychological opinion

7  in determining whether substantial evidence supports the ALJ's decision.  Plaintiff

8  submitted Dr. Pollack's opinion for the first time to the Appeals Council.  ECF

9  No. 14 at 8.  In the Ninth Circuit, a district court must consider new evidence

10  submitted for the first time to an Appeals Council when the Council considers that

11  evidence in denying review of the ALJ's decision.  *Brewes v. Comm'r, of Soc. Sec.*

12  *Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).  The *Brewes* Court appears to

13  distinguish between evidence submitted and evidenced considered:

> We are persuaded that the administrative record includes evidence
> submitted to *and* considered by the Appeals Council.  The
> Commissioner's regulations permit claimants to submit new and
> material evidence to the Appeals Council and require the Council to
> consider that evidence in determining whether to review the ALJ's
> decision, *so long as the evidence relates to the period on or before*
> *the ALJ's decision.*

*Brewes*, 682 F.3d at 1162 (citing 20 C.F.R. § 404.970(b)) (emphasis added).  The

regulations circumscribe what evidence the Appeals Council may consider.  20

Page 31

1  C.F.R. § 404.970(b).  The Appeals Council need not consider evidence that does

2  not relate to the period on or before the ALJ's decision.  *Id.*

3        Here, it is unclear whether the Appeals Council "considered" Dr. Pollack's

4  opinion.  Tr. 1-2 ("…we considered the reasons you disagree with the decision and

5  the additional evidence.  We found this information does not provide a basis for

6  changing the [ALJ's] decision."); *compare* Tr. 2 ("This new information is about a

7  later time.  Therefore, it does not affect the decision about whether you were

8  disabled beginning on or before June 26, 2013.").

9        The Court notes that the Appeals Council did not include Dr. Pollack's

10  report in the administrative record, which is indicative of having not considered

11  the evidence.  *See* 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) (If additional

12  evidence does not relate to the period on or before the date of the ALJ hearing

13  decision, the Appeals Council will return it.).  Moreover, the Court notes that

14  Plaintiff has made no argument that the Appeals Council *actually* considered the

15  report or was required to consider it under the regulations.  *See* ECF No. 14.  Nor

16  did Plaintiff respond to Defendant's arguments regarding Plaintiff's failure to meet

17  the requirements for remand outlined in 42 U.S.G. § 405(g) sentence six.  *See* ECF

18  25.

19        Even if the Appeals Council considered Dennis Pollack's opinion and it

20  became part of the record, the opinion is irrelevant.  Dr. Pollack evaluated her on

Page 32

August 8 and September 9, 2013.  ECF No. 14-1 at 2.  He roots his opinions in the results of the tests he administered on those dates.  ECF No. 14-1 at 8.  Dr. Pollack did not indicate that his opinion as to Plaintiff's functioning was retroactive to a period that was under consideration by the ALJ, nor did he indicate that the limitations would last at least twelve consecutive months.  His opinion cannot relate to whether Plaintiff was disabled prior to June 26, 2013.  Therefore, his opinion does not pertain to whether the ALJ erred.

Alternatively, Plaintiff asks this court to remand her case for consideration of Dennis Pollack's opinion, citing *Embrey v. Bowen*, 849 F.2d 418, 423-24 (9th Cir. 1988).  ECF No. 14 at 19.  In *Embrey*, the court remanded for reconsideration because the claimant produced new and material evidence.  *Id.*  The Social Security Act allows this Court to order the Secretary to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  Plaintiff fails to assert, let alone explain, how her evidence satisfies this requirement.  This court will not "manufacture arguments" for her.  *Greenwood*, 28 F.3d at 977.

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED.**

Page 33

2.      Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**.

The District Court Executive is directed to file this Order, enter **Judgment for Defendant**, provide copies to counsel, and **CLOSE** the file.

DATED this 30th day of March 2016.

_s/ Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE